FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ FEB 17 2006 ★
BROOKLYN OFFICE

ORIGINAL
P&F
C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
NELSON FLORES,

        Petitioner,

-against-

BRIAN FISCHER, Superintendent,

        Respondent.

----------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. CV-05-1970(FB)

*Appearances:*
*For the Plaintiff:*
NELSON FLORES, *Pro Se*
01-A-4301
Sing Sing Correctional Facility
354 Hunter Street
Ossining, N.Y. 10502

*For the Defendant:*
CHARLES J. HYNES, Esq.
District Attorney, Kings County
By: VICTOR BARALL, Esq.
Assistant District Attorney
350 Jay Street, 20th Floor
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

        Petitioner Nelson Flores ("Flores") was convicted following a jury trial in New York Supreme Court, Kings County, of one count of second degree murder and one count of weapons possession. He seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, asserting that his right to a fair trial was violated by (1) the admission into evidence of graphic and unduly prejudicial photographs of the crime scene and the victim's autopsy; (2) the prosecutor's failure to turn over notes from a DNA test prior to trial; (3) the trial court's refusal to suppress statements made by Flores as the fruit of an illegal arrest; (4) the prosecution's failure to prove the fact of the murder victim's death; and (5) defense

1

counsel's ineffectiveness in not objecting to this failure. For the reasons set forth below, the petition is denied.

I.

The following facts are taken from the record of the state court proceedings. Flores's conviction stems from the death of his girlfriend, Maria Rivera ("Rivera"), on February 4, 2000. According to evidence adduced at trial, Rivera attended a birthday party on the afternoon of February 4 with her two daughters, Cindy and Amy Flores. Upon returning to her apartment, Rivera encountered Flores in the kitchen; according to Cindy Flores's testimony at trial, Flores appeared angry. After Cindy and Amy Flores retired to the bedroom to watch television, Flores confronted Rivera regarding her friendship with another man. At some point during the confrontation, Flores struck Rivera on the head with a broken table leg, splitting her skull and killing her instantly. The police officers who later arrived at the crime scene found Rivera's body slumped in a corner of the kitchen. The table leg that appeared to have caused Rivera's injuries was lying next to Rivera; although the officers did not conduct a thorough search of the apartment at this time, they did not observe any other weapons at the scene.

After the encounter with Rivera, Flores proceeded to the apartment where his best friend, Jimmy Rivera, lived with his girlfriend, Mira Garcia ("Garcia"); there, Flores asked Jimmy Rivera to call a cab to take him to the Port Authority Bus Terminal in Manhattan. While they waited for the car to arrive, Flores told Jimmy Rivera and Garcia that he had been in an argument with Rivera and that he thought she was dead because he had hit her twice with a stick; however, Flores did not offer any explanation regarding why he had struck Rivera. After leaving Jimmy Rivera's apartment, Flores fled to Florida,

where detectives assigned to the case arrested him a few days later. Following his arrest, Flores gave a statement in which he asserted that the confrontation with Rivera had escalated into a heated argument, and that he had killed Rivera in self-defense after she became hysterical and attacked him with a kitchen knife. Flores maintained that he did not mean to hurt Rivera, but that he swung the table leg at her in order to "calm her down." Tr. at 717.[1] A subsequent search of Rivera's apartment failed to locate a knife matching the description given by Flores.

Prior to trial, Flores moved to suppress the statement made to the police. Following a hearing during which the trial court took testimony from the arresting officers, the judge found that the arrest was supported by probable cause and that Flores's subsequent statement was voluntary; accordingly, he denied the motion to suppress. Flores's attorney also objected to the admission of notes from a DNA test that identified the blood on the table leg as Rivera's, and which were not turned over to the defense prior to trial; Flores's attorney argued that if he had received the notes earlier he would have had his own DNA expert review them, and that "[m]aybe she would have told me something that I could have used." Tr. at 648. The trial court allowed the notes to be admitted as part of the medical examiner's report, noting that they did not affect the defense theory that Flores had used the table leg to strike Rivera in self defense.

During trial, the court also allowed the admission of a number of crime scene and autopsy photographs. The court ruled, over defense counsel's objections, that the photos were admissible because they were relevant to show the location of Rivera's injuries

---

[1] References to "Tr. ___" are to the transcript of the state court trial proceedings.

and the extent of force used by the defendant, and would serve to both illustrate the testimony of the medical examiner and help the jury determine the credibility of Flores's claim of self defense. During testimony given by Jude Anglade, an employee of the medical examiner's office who was present at the crime scene, the prosecution introduced a photograph that showed the wound to Rivera's head, which comprised a large opening in Rivera's skull through which brain tissue was visible; another photograph, which depicted a skull fragment resting on the window sill behind Rivera's body, was also used by the prosecution to demonstrate the force with which the blow to Rivera's head was delivered.

Lisa Palumbo, the medical examiner who performed Rivera's autopsy, also testified regarding the extent and location of the injuries sustained by Rivera, and opined that although she could not determine whether Flores had delivered more than one blow, the location of Rivera's body and the placement of and apparent force with which the injuries were delivered, were inconsistent with the version of events reflected in Flores's statement, including Flores's assertion that he had struck Rivera in self defense. An additional series of graphic photographs showing the extent of injury to Rivera's skull and brain tissue, which were taken during and immediately following the autopsy, was used to illustrate this testimony.

Although the prosecution did not introduce Rivera's death certificate during trial, testimony established that Rivera was declared dead at the crime scene, and that a friend of Rivera's had subsequently identified her body at the medical examiner's office. Following a jury verdict convicting Flores of depraved indifference murder and weapons possession, Flores was sentenced to concurrent terms of imprisonment of twenty-two and

a half years to life on the murder count and one year on the weapons possession count.

On appeal, Flores presented the same claims asserted in the present petition.[2] The Appellate Division affirmed Flores's conviction, ruling that the crime scene photographs were properly admitted and that although the trial court "improvidently exercised its discretion" in admitting the autopsy photographs, the error was harmless given the overwhelming evidence of Flores's guilt; the court found that Flores's "remaining contentions ... [were] unpreserved for appellate review or without merit." *People v. Flores*, 5 A.D.3d 502, 502-03 (2d Dep't 2004). These claims were thereafter exhausted when Flores sought, and was denied, leave to appeal to the Court of Appeals. *See People v. Flores*, 2 N.Y.3d 799 (2004).

## II.

### A. Standards of Review

Only federal issues may be raised on *habeas* review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). When the state court's decision demonstrates that a federal claim has been "adjudicated on the merits," the state court's judgment is entitled to substantial deference. *See* 28 U.S.C. § 2254(d). "[A] state court adjudicates a state prisoner's federal claim on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (citations and quotations omitted).

For claims "adjudicated on the merits," *habeas* relief may not be granted

---

[2]The brief submitted by Flores's appellate counsel argued only that the admission of the crime scene and autopsy photographs was improper; Flores sought and received permission to file a supplemental *pro se* brief which asserted the remaining claims.

5

unless the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different conclusion. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if it unreasonably applies Supreme Court precedent to the particular facts of a case. *See id.* at 409.

If, instead of reaching the merits, the state court denies a federal claim based on "an independent and adequate state procedural rule, federal habeas review of [the] claim[] is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The state court's reliance on such a rule, however, must be "clear from the face of the opinion." *Id.* at 735 (internal quotation marks omitted). Thus, when a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review *or* without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 810 (2d Cir. 2000) (emphasis added).

The degree of deference to be given to disjunctive state-court holdings is

"anything but clear," *Shih Wei Su v. Filion*, 335 F.3d 119, 126 and n.3 (2d Cir. 2003) (comparing *Ryan v. Miller*, 303 F.3d 231, 246 (2d Cir. 2002) (giving AEDPA deference) with *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003) (declining to give AEDPA deference)). Until it is resolved by the Second Circuit, this potentially thorny issue can be avoided if the claim can be denied on *de novo* review. *See, e.g., Robinson v. Ricks*, 2004 WL 1638171 at *8, n.8 (E.D.N.Y. July 22, 2004) (declining to decide whether AEDPA deference applied "because [petitioner's] claim . . . fails even under a *de novo* standard of review.").

The Court will apply AEDPA deference in reviewing Flores's claim that the introduction of photographic evidence violated his right to a fair trial because the Appellate Division rejected this claim on the merits, *see Flores*, 5 A.D.3d at 502-03; however, because Flores's remaining claims were rejected by the Appellate Division as "either . . . unpreserved for appellate review or without merit," *id.* at 503, they will be reviewed *de novo. See Shih Wei Su*, 335 F.3d at 126 & n.3.

**B. Flores's Claims**

**1. Photographic Evidence**

The state court's determination that the admission of the photographs did not render Flores's trial unfair was not contrary to, or an unreasonable application of, clearly established federal law. Even if, arguably, admission of the photographs were error under state law, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). "For the erroneous admission of . . . unfairly prejudicial evidence to amount to a denial of due process, the

7

item must have been sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Id.* (citation and quotation marks omitted). In assessing materiality, the court reviews the erroneously admitted evidence in the context of the entire record. *See id.*

The crime scene and autopsy photographs were merely illustrative of the testimony of employees from the medical examiner's office and the police officers who responded to the crime scene, each of whom testified to the location and extent of Rivera's injuries and the force with which the injuries appeared to have been delivered. The other evidence in the record, including descriptions of the location of Rivera's body and the placement and extent of the injuries sustained by Rivera; the fact that Flores told Jimmy Rivera and Garcia immediately after the encounter that he had killed Rivera but did not suggest that he had done so in self defense; and the fact that no knife was ever recovered from the crime scene, overwhelmingly refuted Flores's version of events and established that Rivera had been brutally bludgeoned. Even if it be assumed that the photographs were improperly admitted, they were therefore not sufficiently material to "provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it," and their admission did not deprive Flores of due process. *Dunnigan*, 137 F.3d at 125.

### 2. DNA Notes

Flores's second contention, that the prosecution's failure to turn over the notes from the DNA test prior to trial deprived him of due process, is without merit. The prosecution in a criminal matter has a constitutional obligation to disclose exculpatory evidence to the defendant. *See Brady v. Maryland*, 373 U.S. 82 (1967); *Giglio v. United States*,

8

405 U.S. 150 (1972). However, "[a] finding of materiality of the evidence is required under *Brady*," *Giglio*, 405 U.S. at 154, and exculpatory evidence is considered material only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). There is no indication that the DNA notes, which had no bearing upon Flores's contention that he had killed Rivera in self defense, were either exculpatory or material. The prosecution's failure to turn these notes over to Flores prior to trial therefore did not constitute a *Brady* violation.

### 3. Post-Arrest Statement

Flores's third claim, that his post-arrest statement was the fruit of an illegal arrest and should have been suppressed, also fails. In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494-95. Thus, *Stone* bars *habeas* review of claims that statements should have been suppressed as fruit of an illegal arrest. *See Pina v. Kuhlmann*, 239 F.Supp. 2d 285, 289 (E.D.N.Y. 2003) ("It is well settled that [Fourth Amendment] claims are not cognizable for habeas corpus review where a State has provided a full and fair opportunity to litigate this issue."). Following *Stone*, review of Fourth Amendment claims in *habeas* petitions is permissible only: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan*

9

*v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

New York has a corrective procedure for Fourth Amendment violations, which is facially adequate. *See id.* at 70 n.1. Indeed, Flores availed himself of that procedure by making a motion to suppress, which the trial court denied after a hearing, and by appealing that denial. Further, having reviewed the record, the Court concludes that there was no unconscionable breakdown in the underlying process. Flores's Fourth Amendment claim for *habeas* relief is, therefore, barred by *Stone*.

**4. Proof of Rivera's Death**

Flores's final claims, that the prosecution failed to prove the fact of Rivera's death and that defense counsel was ineffective for not objecting to that failure, are without merit. Although the prosecution did offer Rivera's death certificate into evidence, the evidence presented, including the crime scene and autopsy photographs, the testimony of the responding police officers and medical examiner, and the testimony of the individual who identified Rivera's body, clearly established the fact of Rivera's death. Because the evidence offered by the prosecution was sufficient to establish this element, defense counsel was not ineffective for failing to raise this issue at trial.

## III.

Flores's § 2254 petition is denied. Because Flores has failed to make a substantial showing of the denial of a federal right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

SO ORDERED.

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, NY
February 15, 2006